The fourth case this morning, Phillips v. Spencer. May it please the court. Good morning, your honors. My name is attorney Jamil Cunningham and I represent the appellant Louis Phillips. Mr. Phillips is asking the court today to present the district court's finding that he had not provided sufficient evidence to defeat summary judgment on his claims of race discrimination and retaliation regarding his termination as a naval police officer from the United States. Counsel, would you explain something to me? I don't quite understand it. He's not he's not in the Navy, right? No, I believe he was just a civilian officer working at the Great Lakes, hires, apparently hires civilians as part of their police force. Yes, your honor. And Mr. Phillips employment started with Great Lakes in 2003. Starting in 2007, he filed an internal EEO complaint, complaining of racially discriminatory practices at Great Lakes. That resulted in a settlement agreement whereby Great Lakes agreed to not In 2009, Mr. Phillips filed a second internal EEO complaint, complaining that Great Lakes had continued to discriminate against him in violation of the first settlement agreement and had retaliated against him. That also resulted that 2009 internal complaint resulted in a second settlement agreement with Great Lakes to refrain from discriminating against Mr. Phillips. In 2010, Mr. Phillips filed further discrimination complaints, complaining that his now supervisor, James Pittman, Mr. Pittman's supervisor, James Knapp, had continued to discriminate against him and had also continued to retaliate against him. In addition, starting in 2010, Mr. Phillips complained about other discriminatory practices unrelated to him, including the mistreatment and excessive force used against black detainees. He complained that white arrestees failed breathalyzer tests and were allowed to leave while the black detainees, who did not fail, were arrested, and that officers referred to black people as monkeys, coons, and niggers, and even supervisors were planting guns on black arrestees in order to get felony convictions. Again, that started in 2010 and continued through 2012. In 2010, James Knapp, who had previously been Mr. Phillips's counterpart, became his supervisor, and that's when the alleged disciplinary infractions started against Mr. Phillips that ultimately caused his termination. Now, I want to talk about these seven strikes. They're presented as seven strikes because the defendant has said very clearly that it's a culmination of the disciplinary actions that caused Mr. Phillips to be terminated. It wasn't one single event. It wasn't six. It was all seven. Infractions one through four, as we've alleged, are not infractions. Those infractions one through four are allegations by James Pittman that Mr. Phillips was AWOL, that Mr. Phillips failed to properly call in when he was going to be late to work, and he had been marked AWOL. The problem with that is, number one, another commander has already testified, I mean, already provided evidence that that is not the practice or policy to mark an officer AWOL when they call in late. AWOL means that designation is for an officer who doesn't show up and who's missing. Mr. Phillips was simply late, and Mr. Phillips did call in, but he called into the dispatch as opposed to the supervisor. Didn't sometimes he leave early? Isn't that part of it? That's a separate issue. That's a separate strike, but that's not the reason for the AWOLs. The AWOLs, and James Pittman testified, he marked Mr. Phillips AWOL specifically because he called into the dispatch as opposed to calling into him as a supervisor. Well, when I was in the military, AWOL meant absent without leave. I assume that's what they're calling it, right? That is what Pittman's version of the fact is, and there is some dispute there. As we cited the Addickies versus Crest case, the United States Supreme Court says that your policy's not what you have written down, your policy's actually what you're doing. And what's important there is James Knapp, who's in charge of policy there, who's in charge of the other commanders, is said that our policy allows our officers to call in, that they shouldn't be marked AWOL when they call into the dispatch. That doesn't really matter. Is there any evidence that Pittman enforced this policy inconsistently? He was consistently rigid, basically. Your argument is that Pittman was too rigid, that Knapp allows exceptions. No, my argument, Your Honor, with all due respect, is that Pittman says this is how he enforced the policy, but Pittman knew that this wasn't the policy. And also Knapp, who knew... But what matters is whether Pittman discriminatorily enforced the policy. Is there any evidence that he allowed white officers to call in and he didn't allow your client to call in? Not with regard to the AWOL to the first four strikes. So then you don't have any comparison argument with respect to the rigid enforcement of the leave policy by Pittman. Except that he knew that it wasn't a violation. It doesn't matter if he wasn't discriminatorily enforcing it. What matters is whether he was discriminatorily enforcing it. In other words, holding your client to it and not holding everybody else to it. The other officers not in protected classes. So maybe move on to the next category of evidence. Well, I still would like to point out, Your Honor, that that argument is appropriate for the pretext in showing that, again, it wasn't a violation. Knapp, who admitted in testimony that he knew that, still approved that as a grounds for termination for Mr. Phillips. I'll move on. And we'll get to the fifth strike, which is the, I believe, failure to attend a mandatory training. The trainer, well, first of all, it's important that Knapp testified that that's not a violation. That's not something that someone should be disciplined for. It's also important that the trainer, Schultz, testified that officers missed this training all the time. It was something that they made up regularly. And that, more importantly, Pittman testified that he disciplined Mr. Phillips because he did not reschedule the training. Schultz, the actual trainer who's in charge of the training, testified that it's the supervisor's job to reschedule the training. That Phillips couldn't even reschedule the training if he wanted to. It was Pittman's job. The discrimination argument is that there were three non-African American officers who missed the training, who were allowed to make it up, and who were not required to reschedule it, but Mr. Phillips was held to a different standard. It's, moving on to strike six, the allegation was that Mr. Phillips was caught downloading early, that he left early. Mr. Phillips testified, I'm sorry, it was Schultz who testified that he had also that NAP, his supervisor who's responsible for the commanders, knew that he downloaded early, and NAP did not discipline him. NAP testified that in those situations, you work with the officers, you don't discipline them, yet NAP approved Pittman disciplining Mr. Phillips for downloading early, which, by the way, there is evidence, according to Mr. Phillips, that once they saw two officers dressed and ready to check in, that he was allowed to leave, and that it wasn't a violation. Moving on to strike seven, and I'm sorry, Schultz is also the non-African American competitor. Moving on to strike seven, the copier use, there was Adrian Rivera who used the copier for personal use, and he was not disciplined. That was the straw that broke the camel's back, allegedly, for Mr. Phillips, that caused his termination. What's important here is that when he was written up for using the copier for personal use, Pittman had no idea what he was using the copier for. There was no way Pittman could have honestly believed that Mr. Phillips was violating a policy when he wrote him up and sent him to HR. He had no idea what he was even doing. Beyond that, I think it's important to note that the defendant claimed, well, we didn't know that Adrian Rivera used the copier, and there's evidence that a jury would believe to show that that's false and protectual, because number one, the only way that they knew plaintiff was allegedly using the copier was because they saw him on camera. The same security team looked at the same cameras and did not take any action against Mr. Rivera, and even when Mr. Phillips testified that he didn't take any action, and the argument is he didn't because he didn't want to. He only wanted to discipline Mr. Phillips. There is ample evidence of Mr. Phillips' protected activity and that these actions are protectual either because they are, number one, not violations as alleged with the AWOL argument. Number two, non-African Americans were not disciplined for strikes five through seven as Mr. Phillips was. And I will reserve the remainder of my argument for rebuttal. Thank you. Thank you, Counsel. May it please the Court, Counsel, Officer Phillips was terminated because of his repeated misconduct and his failure to follow the Navy's rules, not because of his race or his protected activity. It's undisputed that Mr. Phillips committed at least the following infractions. He left his patrol shift early without permission, which caused him to miss an alarm call, causing his partner to have to respond to the alarm with no backup. In a different shift, he spent two hours in the middle of his shift when he's supposed to be out on patrol, maintaining the safety of the base. Instead, he spent that time making copies, making over 1,000 copies on the Navy's printer for his own private business that he wanted to use for his own financial gain. He skipped a mandatory training even though he was told he needed to attend. He was reminded on the day of training that he needed to be there, didn't go. And then he was repeatedly late for work or didn't come to work at all without receiving approval from a supervisor, including one occasion when he actually did talk to a supervisor, asked for leave. The supervisor said, no, you need to come to work. You don't have a good reason for leave today. And he just didn't show up anyway. Phillips's argument essentially is that the Navy was too hard on him and that it should have let these infractions slide. He wants to ask a jury to sit as the Navy's super personnel department and to make the personnel decisions that HR at the Navy made about whether these were important rules that he needed to follow or not. Counsel, can you explain to me, let me get off the facts of this case. This is a civilian police department on a Navy base. Correct. That's right, Your Honor. Is there a comparable naval shore patrol type? Not that I'm aware of. The police department at the Great Lakes Navy base is all civilians as far as I'm aware. So an important point, which Your Honors have noted, is that this is a discrimination case and there needs to be evidence of discrimination or retaliation, not just an argument that maybe the Navy could have let this go and didn't need to discipline Mr. Phillips for his admitted misconduct. In the district court, Phillips elected to proceed under the McDonnell Douglas burden shifting test and he continues to apply that test on appeal. The district court correctly held that he failed to set forth a prima facie case of discrimination because he didn't identify a similarly situated employee who was treated better. Officer Rivera, who Phillips says was similarly situated because he also used the copier, the conduct was completely different. First, Officer Rivera was not supposed to be out on patrol when he used the copier. He was on a training day, so he wasn't essentially skipping work to use the copier. Second, Officer Rivera made about 100 copies as opposed to the 1,375 copies that Officer Phillips made. Third, Officer Rivera didn't make those copies for his own benefit. Rather, Phillips himself asked Officer Rivera to make the copies and then Phillips is the one who turned around and used them for an improper purpose for his own side business. Rivera reported to a different supervisor. Nobody noticed that Rivera used the copier, which there's no surprise there because he was where he was supposed to be, used it for a few minutes so the Navy never disciplined him, of course, for something they never recognized, and Officer Rivera doesn't have a similar history of misconduct as Phillips does. The other comparator that Phillips raises is Officer Schultz, who did commit misconduct by, when he was near the end of his shift, he was supposed to be out patrolling the base and instead he drove to the police station and he parked in the parking lot and waited until it was time for him to go. But the difference is Officer Schultz kept his firearm, he kept his radio. If there had been an emergency call, which there wasn't, but if there had been one, he was available and ready to respond to it. He just wasn't patrolling like he was supposed to. Officer Phillips just left. He turned in his gun, he turned in his radio. There actually was an alarm call. He didn't show up. He put his gun down. Not comparable conduct. The other officers who missed training, it was Officer Phillips' burden to show that they were similarly situated. He fell far short. There's no evidence of why they missed training or whether they had permission from a supervisor. Phillips also failed to identify any evidence of pretext that the Navy's lying about why they terminated him and so he failed the second or the third step of the McDonnell-Douglas test as well. Unless you have any further questions, I'd ask that you affirm the judgment of the District Court in this case. Thank you. May it please the Court, just a quick response. As outlined in the briefing, the similarly situated comparable framework that's used or that's set forth in the Coleman v. Donahoe case is whether or not the individuals violated the same rule or policy. The Department of Justice is arguing about how many copies that Mr. Phillips made. That's not the issue because Pittman specifically testified he didn't know how many copies it was at the time. It wasn't about the copies. It was the fact that Mr. Phillips was using the copier for personal use. That was the alleged violation. There's no dispute that Rivera also used the copier for personal use. There is a dispute about what that personal use was. Rivera says Phillips asked him to use it because he needed help with the shooting stance. Phillips said no I didn't. I didn't need any help with my shooting stance. But what is undisputed is that the defendant knew that Rivera used the copier for personal use and did not treat him in the same manner as Mr. Phillips. Moving on to Mr. Schultz, it's not about what weapons he had on him. The issue was that Mr. Schultz downloaded early. The policy is that you're not to download early. And that's what Mr. Phillips was accused of downloading earlier. And again, Mr. Schultz was not disciplined in the manner that Mr. Phillips was. Lastly, the three individuals who missed training, counsel argues we don't know what evidence isn't there, but we do know what is there. We do know that they missed the training. We do know that Mr. Phillips also missed the training and that he was disciplined for it. And again, regarding the pretext issue, as I argued the AWOL issue one through four is pretext because that, what Mr. Phillips was written up for, admittedly by Knapp, is not a violation, admitted by Cecil Robinson. Cecil, I can't remember his last name. It's not a violation. There's no way Pittman believed that these things were actual violations when the defendant's policy and practice simply says that they're not. And if there are no further questions, thank you. We ask the District Court decision be the first. Thank you. Thanks to both counsel and the cases taken under advisement.